UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL ANGELO BURNETT,

        Plaintiff,

v.

HEIDI E. WASHINGTON,

        Defendant.

_____/

Case No. 2:24-cv-180

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002). That means payment should precede preliminary review pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), which the Court is required to conduct prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a

defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that Defendant is not presently a party whose consent is required to permit the undersigned to enter an opinion, order, and judgment denying Plaintiff leave to proceed *in forma pauperis* and dismissing this action without prejudice. *See Neals*

2

*v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

## Discussion

The PLRA amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the United States Court of Appeals for the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in Section 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010), (ECF Nos. 6, 7); Op. & J., *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Caruso et al.*, No. 2:09-cv-180

4

(W.D. Mich. Oct. 8, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Hill et al.*, No. 2:09-cv-39 (W.D. Mich. Mar. 6, 2009), (ECF Nos. 8, 9); Op. & Order, J., *Burnett v. Caruso et al.*, No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009), (ECF Nos. 15, 16). In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in numerous cases. All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996.

As explained below, Plaintiff's allegations in the present action do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which

5

the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

In the present action, Plaintiff sues Michigan Department of Corrections (MDOC) Director Heidi Washington. (Compl., ECF No. 1, PageID.1.) Plaintiff is currently incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. (*See id.*) In Plaintiff's complaint, he alleges that "after Defendant Washington became Director of the MDOC in 2014, she encourage[d] prison officials in the MDOC to rape and murder Plaintiff Burnett, by providing them with a financial incentive, additional funds deposited in their checks."[3] (*Id.*, PageID.2.) Plaintiff further alleges that "during Defendant Washington's ten year tenure[,] prison officials . . . have bused Plaintiff Burnett around to eighteen correctional facilities . . . raping and slowly poisoning him with human feces in which he is forced to ingest, resulting in him becoming physically ill and sick." (*Id.*) Plaintiff claims that "prison officials in the MDOC instruct medical staff . . . to deny Plaintiff Burnett medical attention for the reported rapes and assaults with human feces, by putting in referrals to mental health care." (*Id.*) Plaintiff further claims that as a result of his complaints "to mental health staff about the daily rapes and slow poisoning with human feces by prison officials, [Plaintiff] was diagnose[d] as paranoid and schizophrenic, despite being found not mentally ill by an independent psychiatrist hired by the state attorney general's office." (*Id.*)

Additionally, Plaintiff has "filed at least one hundred grievances seeking an investigation into the brutal rapes and slow poisoning of him with human feces, and appealed each denial to step II and step III of the grievance process for the MDOC." (*Id.*) Plaintiff states that "the step III appeals were sent directly to Defendant Washington's office for her review, and no investigation has ever ensued," and "the brutal rapes and slow poisoning of Plaintiff Burnett with human feces

---

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

by MDOC officials ha[s] continued unabated for ten straight years and occurs everyday." (*Id.*, PageID.2–3.) Plaintiff "recently exhausted a grievance for [Washington's] role in the ongoing rape and murder plot against him." (*Id.*, PageID.3.)

Further, Plaintiff alleges that on July 29, 2024, while he was incarcerated at Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, non-party segreant Garrett wrote him a false class I sexual misconduct ticket. (*Id.*) Plaintiff claims that as he was being transported to segregation, non-party sergeant Garrett told Plaintiff "that it was by order of Defendant Washington for filing a grievance against her." (*Id.*) Plaintiff also claims that after he "stepped into the segregation cell, he was shoved onto the bed and anal raped while in handcuff[s]." (*Id.*) Plaintiff states that "the rape was video streamed live, [and] watched and recorded in the control center." (*Id.*) Plaintiff also states that he "was watched and recorded in the segregation cell" by non-party correctional officials at LCF. (*Id.*) Ultimately, Plaintiff was found not guilty of the sexual misconduct charge on July 31, 2024. (*Id.*)

Plaintiff claims that "as a result of the ongoing brutal rapes for ten years straight, Plaintiff Burnett continue[s] to suffer . . . pain, . . . mental anguish, [and] denial of medical care and mental health care." (*Id.*, PageID.4.) Plaintiff further claims that "as a result of the ongoing slow poisoning with human feces for ten years straight, Plaintiff Burnett continue[s] to suffer nausea, vomiting, abdominal pain, . . . mental anxiety, . . . [and] denial of medical care and mental health care." (*Id.*) Notably, in the present case, Plaintiff does not indicate *how* the alleged daily rapes and forced feeding of feces has occurred.

Plaintiff's allegations regarding forcible consumption of human waste and alleged daily rapes have been some of Plaintiff's "go to" allegations to avoid the "three strike" consequences of previously filing meritless lawsuits. For example, in three cases filed in 2020, Plaintiff alleged that

various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years. *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.).[4] In at least some of those cases, Plaintiff admitted that he suffered from paranoia and schizophrenia. The Court ultimately determined that Plaintiff's allegations of imminent danger in all three cases were irrational and clearly baseless, and, therefore, did not support a conclusion that Plaintiff was in imminent danger of serious physical injury within the meaning of Section 1915(g). *See Vandiver*, 727 F.3d at 585; *Rittner*, 290 F. App'x at 79. And recently, in another case, Plaintiff alleged that corrections officials at LCF "programmed the Personal Protection Device Computer System to commit the physical act of rape by programming it to grip and gyrate Plaintiff's hips and to repeatedly penetrate Plaintiff's [private area]." *Burnett v. Washington*, No. 1:24-cv-155, 2024 WL 1340551, at *3 (W.D. Mich. Mar. 29, 2024). The Court again concluded "that Plaintiff's present allegations of imminent danger [we]re 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible' and d[id] not support a conclusion that Plaintiff [wa]s in imminent danger of serious physical injury." *Id.* (citation omitted)).

---

[4] Plaintiff's allegations are also similar to allegations in complaints he filed in the United States District Court for the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, No. 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week). Additionally, Plaintiff's allegations are similar to allegations in the complaint that he filed in *Burnett v. Corrigan et al.*, No. 2:22-cv-129 (W.D. Mich.), in which he alleged that officials at Chippewa Correctional Facility sprayed human waste in his face and mouth using an industrial-sized spray bottle.

Here, the sole Defendant in this suit is MDOC Director Washington, and Plaintiff's only allegations that connect Defendant Washington to the alleged actions that are occurring against him are that: (i) over the past ten years, "she encourage[d] prison officials in the MDOC to rape and murder Plaintiff Burnett, by providing them with a financial incentive, additional funds deposited in their checks;" (ii) Plaintiff has "filed at least one hundred grievances seeking an investigation into the brutal rapes and slow poisoning of him with human feces, and appealed each denial to step II and step III of the grievance process," and "the step III appeals were sent directly to Defendant Washington's office for her review, and no investigation has ever ensued;" and (iii) on July 29, 2024, at LCF, as Plaintiff was being transported to segregation after receiving a sexual misconduct ticket, non-party sergeant Garrett told Plaintiff "that it was by order of Defendant Washington for filing a grievance against her." (Compl., ECF No. 1, PageID.2–3.)

As an initial matter, with respect to Plaintiff receiving a sexual misconduct charge on July 29, 2024, at LCF, which was allegedly at the direction of Defendant Washington, this singular event occurred in the past and does not show any risk of serious physical injury at the time that Plaintiff filed his complaint on October 16, 2024. Furthermore, although Plaintiff alleges in a conclusory manner that, over the past ten years, Defendant Washington has provided "additional funds deposited in [officials'] checks" to "encourage prison officials in the MDOC to rape and murder Plaintiff" and that over the years, she has received Plaintiff's step III grievance appeals regarding "the brutal rapes and slow poisoning of him with human feces," but "no investigation has ever ensued," Plaintiff alleges no other *facts* to suggest that he is *presently* in imminent danger from Defendant Washington. (*See id.*)

Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*,

9

727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. *See also LaPine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (noting "the lack of any controlling authority [in this Circuit] rejecting the nexus requirement" and finding no abuse of discretion where the district court denied *in forma pauperis* status because the legal claims were not tied to the danger). This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Commissioner of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557

U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to Section 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, Section 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 F.3d at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 71 (D.C. Cir. 2020). Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions.").

In summary, as the Court has concluded in many of Plaintiff's prior cases, the Court concludes that Plaintiff's present allegations of imminent danger are largely "fantastic or delusional and rise to the level of irrational or wholly incredible," *Rittner*, 290 F. App'x at 79, and do not support a conclusion that Plaintiff is in imminent danger of serious physical injury. And

11

regardless, Plaintiff has failed to allege facts to show the requisite nexus between any alleged danger and the sole named Defendant in this action.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under Section 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## **Conclusion**

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[5]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing

---

[5] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   November 13, 2024                           /s/ Sally J. Berens
                                                                            SALLY J. BERENS
                                                                            United States Magistrate Judge